UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBERT SCHLATTMANN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:16cv1183 SNLJ |
|  | ) |  |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# MEMORANDUM AND ORDER

Plaintiff Robert Schlattmann brings this case under the Fair Debt Collection Practices Act ("FDCPA") against defendant Portfolio Recovery Associates, LLC ("PRA"), alleging that PRA called him over 70 times for a debt that Schlattmann did not owe. The parties have cross-moved for summary judgment.

## I. Factual Background

The following facts are undisputed except where indicated. Plaintiff acquired a residential telephone number ending in -8996 in December 2014. Defendant PRA is a debt collector as defined by the FDCPA. Between December 1, 2014 and June 11, 2016, defendant PRA called the 8996 telephone number 73 times in an attempt to reach an individual identified as M.A. who owned a credit account ending in 9992. M.A. previously used the telephone number ending in 8996 which was acquired by plaintiff in December 2014.

PRA has a log for the calls it made to phone number 9886 between December 2014 and June 11, 2016. The average frequency of PRA's phone calls to the 8996 number was four times per month. Between December 2014 and June 11, 2016, PRA called the 8996 number three times in a single day on one occasion --- at 10:26 a.m., 12:17 p.m., and 5:17 pm. CST. The earliest time PRA called the 9886 number was at 8:03 a.m. CST and the latest call was at 8:35 p.m. CST.

Plaintiff submitted an affidavit from nonparty M.A., who was the account holder for the credit account ending in 9992 and the individual PRA intended to reach when PRA called number 8996. M.A. states that PRA began calling him at various phone numbers (including the 8996 number) beginning in 2008. M.A. avers that he asked PRA to stop calling him and that he changed his phone number and filed for bankruptcy in response to PRA's efforts to collect on the debt. PRA's business records do not reflect that M.A. ever asked PRA to stop calling.

PRA's call logs to the 8996 number show that the phone calls terminated in various ways. Most calls resulted in "No Contact" due to "No answer" or "Answering Machine/Voice Mail" for which "No Message" was left. For six calls, an "unknown party" answered the call. PRA states that, according to its procedures, if its agent had learned that the accountholder M.A. had not been reachable at the 8996 phone number, a result code of "Wrong Number" would have been indicated on the log. None of the calls to 8996 received a "Wrong Number" code result. Two calls had the result code of "Cust hung up in OUT Q," meaning that the call connected but the party hung up before an agent of PRA could speak with him or her. Three calls had the result code of "Left

Message Voice." And one call had the result code "Did not ID." "Left Message Voice" is presumably different from the codes reflecting that a message was left on voicemail for calls that were not answered by person. But defendant does not explain what "Left Message Voice" or "Did not ID" codes mean.

PRA received phone calls from the 8996 phone number on February 12, February 17, May 2, and June 14, 2016. PRA has recordings for each of those calls. The caller said nothing to PRA during the February 12, February 17, and May 2 calls. During the June 14 call, however, the caller identified himself as plaintiff Schlattmann and provided the 8996 phone number. PRA apologized, stated it had a wrong number, and advised plaintiff that it would remove the number. PRA states that was the first time it learned that the accountholder M.A. could not be reached at the 8996 phone number. Plaintiff, however, states that he told defendant multiple times between December 2014 and June 2016 that it had the wrong number and not to call again.

Plaintiff filed this lawsuit on June 16, 2016, claiming that defendant had violated the FDCPA.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the

3

facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion

**III. Discussion**

Both plaintiff and defendant have moved for summary judgment.

To prove plaintiff's claim that defendant PRA violated the FDCPA, plaintiff must show that (1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant who attempted to collect the debt qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in a prohibited act or failed to perform a requirement imposed by the FDCPA. *McKinley v. Cavalry Portfolio Services, LLC*, 4:15-CV-780-CEJ, 2016 WL 304542, at *2 (E.D. Mo. Jan. 25, 2016).

Only the third factor is contested. For that element, plaintiff claims defendant placed calls in violation of § 1692d(5), which states that a "debt collector may not engage

4

in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

"To determine whether a debt collector's calls amount to harassment, annoyance or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct." *Moore v. CCB Credit Services, Inc.*, 4:11CV2132 RWS, 2013 WL 211048, at *3 (E.D. Mo. Jan. 18, 2013). "Making legitimate, persistent efforts to contact a debtor does not violate the FDCPA." *Id.* at *13. Even "placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct (threatening messages)," is not sufficient to show an FDCPA violation. *Id.* at *3.

Plaintiff alleges that he told defendant that it had the wrong phone number and that it should stop calling him. Defendant states that the only evidence that such a conversation took place, however, is the recorded phone call on June 14, 2016. During that phone call, plaintiff told defendant it had the wrong number and defendant apologized, and after which defendant never called the 8996 number again. Although someone from the 8996 phone number called defendant other times before the June 14, 2016 conversation, no conversations took place as a result of those earlier calls.

Plaintiff disputes that he first told defendant that they had the wrong number on June 14, 2016. In support, plaintiff states that he "repeatedly told defendant to stop calling him and that they had the wrong number," (*e.g.*, #63 at ¶¶ 10-15). Plaintiff does

5

not say precisely when those conversations occurred. Plaintiff only states --- in response to defendant's interrogatory on the matter --- that "the parties spoke between December 2014 to the time of filing the petition." (*See* #59 at ¶ 26.)

Plaintiff suggests that it was enough that his answering machine message advised callers that they had reached Robert Schlattmann and they should leave a message. There is no evidence that defendant's agents heard the message, however, or that it stated that no one else was reachable at that phone number.

Plaintiff also suggests that defendant violated the FDCPA because the accountholder M.A. avers that he told defendant to stop calling him. However, defendant's business records do not reflect that any call to 8996 resulted in being advised to stop calling. Further, M.A.'s affidavit does not state when and on what phone number he told defendant to stop calling him. And, finally, any evidence that M.A. advised defendant to stop calling cannot support the element that defendant called the 8996 number with the intent to harass plaintiff.

Ultimately, plaintiff's claim depends on his allegation that defendant called him even after it knew it had the wrong number. *See Pratt v. CMRE Fin. Services, Inc.*, 4:10-CV-2332 CEJ, 2012 WL 86957, at *3 (E.D. Mo. Jan. 11, 2012) ("Intent may be inferred by evidence that the debt collector continued to call after being asked not to call."). Defendant insists that plaintiff cannot show defendant knew it had the wrong number until June 2016, when it stopped calling. Indeed, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the

not say precisely when those conversations occurred. Plaintiff only states --- in response to defendant's interrogatory on the matter --- that "the parties spoke between December 2014 to the time of filing the petition." (*See* #59 at ¶ 26.)

Plaintiff suggests that it was enough that his answering machine message advised callers that they had reached Robert Schlattmann and they should leave a message. There is no evidence that defendant's agents heard the message, however, or that it stated that no one else was reachable at that phone number.

Plaintiff also suggests that defendant violated the FDCPA because the accountholder M.A. avers that he told defendant to stop calling him. However, defendant's business records do not reflect that any call to 8996 resulted in being advised to stop calling. Further, M.A.'s affidavit does not state when and on what phone number he told defendant to stop calling him. And, finally, any evidence that M.A. advised defendant to stop calling cannot support the element that defendant called the 8996 number with the intent to harass plaintiff.

Ultimately, plaintiff's claim depends on his allegation that defendant called him even after it knew it had the wrong number. *See Pratt v. CMRE Fin. Services, Inc.*, 4:10-CV-2332 CEJ, 2012 WL 86957, at *3 (E.D. Mo. Jan. 11, 2012) ("Intent may be inferred by evidence that the debt collector continued to call after being asked not to call."). Defendant insists that plaintiff cannot show defendant knew it had the wrong number until June 2016, when it stopped calling. Indeed, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). Defendant argues that the plaintiff's affidavit cannot defeat its summary judgment motion because the affidavit does not provide details of when plaintiff told defendant it had the wrong number other than the June 14, 2016 conversation. The Court finds, however, that a jury might find for the plaintiff under these facts --- particularly in light of the defendant's phone log, which includes at least four phone calls that may have been answered by plaintiff. Although defendant maintains that, had plaintiff indicated defendant had the wrong number, an entry would have been made to that effect, there remains a fact question whether plaintiff's conversation with the agent put defendant on notice that it had the wrong number. Defendant suggests that its business practices would have required the agent to record a "Wrong Number" code in that event, but defendant did not explain the vague codes that were recorded for those "unknown party" calls. Further, nowhere in the log does a "Wrong Number" code exist because, apparently, defendant only accepted plaintiff's statement that it had the wrong number after plaintiff called defendant directly --- it was not the result of one of defendant's calls to plaintiff.

  A jury might believe plaintiff --- and there is room to do so under the current record --- that plaintiff told defendant to stop calling and that defendant continued to call. However, because the Court must resolve conflicts in favor of the nonmoving party, the Court must deny both parties' motions for summary judgment.

7

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#57) is DENIED and plaintiff's motion for summary judgment (#50) is DENIED.

Dated this __4th__ day of January, 2018.

                                              STEPHEN N. LIMBAUGH, JR.
                                              UNITED STATES DISTRICT JUDGE